UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

AUNDRAE WARD,

       Plaintiff,                         Case No. 3:15-cv-290

vs.

COMMISSIONER OF                   District Judge Thomas M. Rose
SOCIAL SECURITY,               Magistrate Judge Michael J. Newman

       Defendant.

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

    This is a Social Security disability benefits appeal.  At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2]  This case is before the Court upon Plaintiff's Statement of Errors (doc. 7), the Commissioner's memorandum in opposition (doc. 8), Plaintiff's reply (doc. 9), the administrative record (doc. 6),[3] and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920[,] respectively."  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

## I.

**A.    Procedural History**

Plaintiff filed for DIB and SSI alleging a disability onset date of May 1, 2009.  PageID 219-31.  Plaintiff claims disability as a result of a number of alleged impairments including, *inter alia*, intellectual disability, obesity, gout, hypertension, and diabetes mellitus.  PageID 43-44.

After initial denials of his applications, Plaintiff received a hearing before ALJ Irma J. Flottman on March 24, 2014.  PageID 60-97.  The ALJ issued a written decision on May 27, 2014 finding Plaintiff not disabled.  PageID 41-55.  Specifically, the ALJ's findings were as follows:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.

2.    The claimant has not engaged in substantial gainful activity since May 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    Prior to the date last insured, with respect to the Title II claim for a period of disability and [DIB], the claimant had the following severe impairment: an intellectual disability.  Since the expiration of the date last insured, with respect to the Title XVI application for [SSI] filed October 14, 2011, the claimant has the following severe impairments: obesity, gout of the bilateral ankles, hypertension, diabetes mellitus, an anxiety disorder, and an intellectual disability (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that prior to the date last insured, the claimant had the residual functional capacity ["RFC"] to perform . . . light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he was limited by his intellectual disability to performing simple and routine, repetitive tasks.  Since the alleged onset date, the claimant has the [RFC] to lift

2

and carry up to 20 pounds occasionally or 10 pounds frequently.  He can stand and walk for 4 hours, and sit for up to 6 hours in an 8-hour workday, with normal breaks.  He can occasionally climb ladders, ropes, or scaffolds.  He can frequently stoop, kneel, crouch, or crawl.  Mentally, he can perform simple, routine, repetitive tasks with no production requirements or pace work in a low stress job defined as only occasional changes in the job work setting, where those changes can be easily explained.  He can perform work that requires only occasional interaction with the public or co-workers.

6.    Prior to the date last insured, the claimant was capable of performing [his] past relevant work as an Industrial Cleaner.  This work does not require the performance of work-related activities precluded by the claimant's [RFC] (20 CFR 404.1565 and 416.965).

7.    The claimant was born [in] 1965 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

8.    Considering the claimant's age, education, work experience, and residual functional capacity ["RFC"], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

9.    The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

PageID 43-54.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner.  PageID 30.  Plaintiff then filed this timely appeal.  *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

3

### B.    Evidence of Record

The ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 44-52.  Plaintiff and the Commissioner both summarize the record evidence in their respective filings.  Doc. 7 at PageID 410-14; doc. 8 at PageID 426-28.  Accordingly, except as otherwise noted, the undersigned incorporates the ALJ's recitation of the evidence as well as the parties' summaries of the evidentiary record.  Where applicable, the Court will identify the medical evidence relevant to this Report and Recommendation.

## II.

### A.  Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  "[A] decision of the

4

Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1.  Has the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's RFC, can he or she perform his or her past relevant work?

5.  Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

**III.**

In his Statement of Errors, Plaintiff argues that the ALJ erred in: (1) failing to develop the record and thereby determine that he meets or equals the elements of Listing § 12.05(C) regarding intellectual disability; (2) improperly weighing the opinion of consulting examiner Dr. Oza; and (3) posing one or more inaccurate hypothetical questions to the vocational expert. The undersigned finds that the ALJ failed to fully and adequately develop the record, when she declined to order additional intelligence testing for Plaintiff. This error mandates that reversal and remand occur here. Accordingly, the merits of Plaintiff's second and third arguments need not be reached.

The ALJ has the ultimate responsibility to ensure that a claimant receives a full and fair hearing. *Richardson*, 402 U.S. at 411. Closely related to this responsibility is the ALJ's duty to fully and fairly develop the record. *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986). Failure to develop the record constitutes grounds for reversal of the ALJ's decision, and remand under Sentence Four is required for additional administrative proceedings. *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). Generally, the "ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). However, "[t]he failure to exercise that discretion when the record is inadequate to assess the claimant's RFC is grounds for reversal." *Johnston v. Comm'r of Soc. Sec.*, No. 1:10-cv-444, 2012 WL 1030462, at *6 (S.D. Ohio Mar. 27, 2012).

At the administrative hearing, Plaintiff's counsel informed the ALJ that Plaintiff had undergone IQ testing as a 14 year-old student (*i.e.*, approximately 33 years prior to the hearing), but that the results of this testing were not precise. PageID 63-64. Plaintiff's counsel then

requested that the ALJ order additional IQ testing if she was not satisfied that Plaintiff met or equaled the requirements of Listing § 12.05(C). PageID 65.

The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations omitted). "Because satisfying the [L]istings yields an automatic determination of disability . . . the evidentiary standards [at Step Three] . . . are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). Plaintiff has the burden of proving that he or she meets or equals all of the criteria of a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).

Listing § 12.05 provides in relevant part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements of A, B, C, or D are satisfied.
>
> . . .
>
> (B) A valid verbal, performance, or full scale IQ of 59 or less; or
>
> (C) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. In other words, for a claimant to meet or equal Listing § 12.05, he or she must meet the criteria under subsection A, B, C, or D, as well as "satisfy the diagnostic description" in the introductory paragraph, *i.e.*, "(1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations."

*Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009) (internal citations omitted). "The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills." *Id.* at 677 (internal citation omitted).

In her decision, the ALJ found that Plaintiff did not meet or equal Listing § 12.05(C) because he "[did] not have a valid verbal, performance, or full scale IQ of 60 through 70." PageID 48. In support, the ALJ stated that "no full scale IQ scores were indicated in the records." PageID 49. However, contrary to the ALJ's statement, Plaintiff's school records, which were part of the record below, show that in February 1979 Plaintiff underwent a psychological assessment resulting in "verbal," "performance," and "full scale" IQ scores all falling within "Stanine 1." PageID 327, 331. Notably, according to that 1979 assessment, a "Stanine 1" IQ score falls between 55 and 70 on a Wechsler IQ test, *see* PageID 331, *i.e.*, a score that would satisfy the IQ requirements of Listing § 12.05.

Plaintiff's school records also show that, at age fourteen, he had a reading level of a first-grader and the arithmetic skills of a second-grader (*see* PageID 328), *i.e.*, evidence of "a serious intellectual deficiency which the ALJ could not ignore." *Johnston*, 2012 WL 1030462, at *6 (footnote omitted). Other evidence further demonstrates the severe, ongoing nature of Plaintiff's intellectual functioning; namely, Plaintiff's testimony that he is homeless, cannot read a newspaper, cannot handle his finances, can cook simple meals only after being told repeatedly how to do so. PageID 65, 83-85. In addition, consulting psychological examiner Dr. Jerry Flexman found Plaintiff's intellectual functioning "to be below average" and diagnosed him with "mild mental retardation" based his school records. *Id*.

Courts in this District have considered similar circumstances as those presented here. Notably, in *Johnston*, Judge Black found reversible error where the ALJ failed to order IQ

testing despite school records showing the claimant's consistent poor performance and standardized tests scores in the "2nd to 4th stanine levels." *Johnston*, 2012 WL 1030462, at *3. Judge Black found that "the record contained substantial evidence that [the claimant] had an intellectual deficit," and held that "[t]he lack of IQ testing in light of the impairments suggested by the school records and [claimant's] physicians prevented fair review" of the claim. *Id*. at *5-6. Accordingly, the court reversed the ALJ's decision for failure to fully and fairly develop the record -- and ordered remand under Sentence Four *Id*. at *6.

Here, like the claimant in *Johnston*, Plaintiff's academic record -- even without reference to the IQ scores -- and the record as a whole indicate intellectual performance levels far below average. PageID 328. Unlike the claimant in *Johnston*, however, Plaintiff's records consisted of prior intelligence testing, the results of which strongly suggest that Plaintiff's intelligence level may satisfy the Listing. *See Johnston* at *5 (stating that "courts recognize that IQ scores become static in adulthood").

**IV.**

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17

F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

In this case, the undersigned finds that the ALJ failed to adequately develop the record. Thus, the undersigned cannot determine whether disability is overwhelming based upon the record as it currently stands.  On remand, the ALJ should order additional intelligence testing to accurately determine whether or not Plaintiff meets or equals Listing § 12.05(C).  Following the receipt of such evidence, the ALJ should hold another administrative hearing -- utilizing a medical advisor and vocational expert, if appropriate -- and determine Plaintiff's disability status anew.

**V.**

**IT IS THEREFORE RECOMMENDED THAT:**

1.      The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2.      This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3.      This case be **CLOSED**.


Date:   July 8, 2016                              */s/ Michael J. Newman*
                                                Michael J. Newman
                                                United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).